## Case No. 10,018.

### The NARRAGANSETT.

[10 Blatchf. 475.] [1]

Circuit Court, E. D. New York.  Feb. 25, 1873. [2]

COLLISION—VESSEL OVERTAKING—DUTY.

Two steamboats, the P. and the N., bound from New York, to go through Hell Gate, proceeded up the East river, the P. astern. On entering Hell Gate, the stem of the P., which was the faster boat, and the longer boat, had reached to a few feet in advance of the stem of the N.; the stern of the P. was not up to the stern of the N. The two vessels collided, and the P. was injured: Held, under article 17 of the rules in the act of April 29, 1864 (13 Stat. 61), that the P., as the overtaking vessel, was bound to keep out of the way of the N., and that the P. was in fault, and the N. was not in fault.

[Appeal from the district court of the United States for the Eastern district of New York.]

In admiralty.

Abbett & Fuller, for libellants.

Joseph H. Choate, for respondents.

WOODRUFF, Circuit Judge. The steamboat Providence, belonging to the libellants, and the steamboat Narragansett, were freight and passenger boats, running from the port of New York, through the East river and Long Island Sound, the former to Newport and Fall River, and the latter to Stonington. The berth or dock of the former was at the foot of Chambers street, on the North river, and the berth of the latter was at the foot of Jay street, on the North river, two piers, or about four hundred feet, higher up the river. The hour of departure

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
2 [Affirming Case No. 10,016.]

for both was five o'clock in the afternoon. On the 24th day of April, 1869, the Providence started about twenty minutes after five, and, when partly out of her slip, the Narragansett started from her slip above. They proceeded towards the Battery, the Narragansett astern of the Providence, but, on nearing the Battery, the Providence, meeting a tow and other vessels, took a broad circuit, down to near Governor's Island, and over to very near the Brooklyn wharves, and then took her course up the East river, still, however, near the Brooklyn shore. As the Narragansett, much the shorter boat, neared the Battery, an opening presented itself, and she swung around close to the Battery, and took her course up the East river near the New York side of the river. The Providence was the faster boat, when each was at full speed. The speed of neither, while making their turns and passing up to Hell Gate, is given with much precision, by the testimony, but it is clear, upon all the evidence, that, when they were opposite Thirty-Fourth street, they were near each other, and the bow of the Providence lapped the after part of the Narragansett. There is great conflict, in the evidence, in regard to the relative position of the two bows before that time, as well as thence onward, until they were in Hell Gate; but, although the stem of the Providence was, while passing along Blackwell's Island, and on entering Hell Gate, a few feet in advance of the stem of the other boat, the testimony will not warrant the conclusion, that, in any part of that portion of their passage, the stern of the Providence was, at any time, up to the stern of the other. They entered Hell Gate thus, side by side, the stem of the Providence a few feet in advance, and to the starboard, of the Narragansett. In that dangerous, narrow and crooked channel, just after turning Hallett's Point, the Narragansett was drawn towards the Providence by what the witnesses call the suction of the latter, and her guards, at about midships, broke into the side of the upper works of the Providence, inflicting upon her the injury for which indemnity is sought in this cause. In the district court, the libel of her owners was dismissed [Case No. 10,016], and the libellants appealed to this court.

There is evidence tending to show that the Providence unnecessarily crowded upon the Narragansett, where it was easy and safe to have kept off more to the starboard, and that the Narragansett was, in fact, as far to port as was safe, and further than was ordinarily prudent. It is, on the other hand, denied, that the Providence did not give the other all the room consistent with safety to herself. If it was at all material to the decision, I should be constrained to find, upon the evidence, that the Providence brought the injury upon herself, by needlessly crowding to port, and upon the other boat, and ought to bear the consequences. But, in

truth, the boats ought not to have been in any such position, in so narrow and difficult a passage, among the rocks of Hell Gate.

I concur fully in the opinion of the judge of the district court, which places the decision upon other and conclusive grounds. The decided preponderance of the evidence establishes, that the Providence, by her long circuit around, near Governor's Island and the Brooklyn wharves, was astern of the Narragansett, when the boats respectively straightened up the East river. She endeavored, and her somewhat greater speed enabled her, to come up with the other boat, so as to place herself in the position first above described; but, she at no time passed the other. She was, therefore, under the full operation of article seventeenth of the rules of navigation, enacted April 29, 1864 (13 Stat. 61): "Every vessel overtaking any other vessel shall keep out of the way of the said last-mentioned vessel." It was her duty to keep out of the way of the Narragansett; and the next following rule made it the duty of the latter to keep her course. True, it is not the duty of a faster boat to remain behind when she overtakes a slower one; but she takes upon herself the risk and hazard of passing. She must choose a safe and sufficiently wide place, where it may be done with safety to both, the slower vessel doing nothing to prevent, other than keeping her own course. It is not enough, that the faster vessel has so far succeeded as to come alongside, or even project her bow beyond the bow of the other, so as to make it probable that she will pass. If she does this and persists, she does it at her peril. The rule has not then ceased to operate upon her. That rule is explicit, and neither greater speed, nor an attempt to dictate to the other, will excuse her, if collision ensues. It is not necessary to enquire whether any rule of the supervising inspectors would relieve her, if she violate this express statute; for, here, it is proved, that no rule had, at the time of this collision, been promulgated, which is in conflict with this view. It is unnecessary for me to repeat the further views of the rights, the conduct or the duty of the two vessels, expressed in the opinion of the court below. They are, I think, conclusive. Let the libel be dismissed, with costs, including costs of the appeal.