CARLL and others *v.* THE ERASTUS WIMAN.

SMITH and others *v.* SAME.

HALLOCK, as Adm'x, *v.* ANDERSON.

ANDERSON and others *v.* CARLL and others.

*In re* CARLL, Petitioner.

(*District Court, S. D. New York.* April 28, 1884.)

1. COLLISION—SAILING VESSELS—LOOKOUT—PRESUMPTION.

Where a collision happens between two sailing vessels, the one sailing close-hauled, the other with the wind free, the night being clear and the lights of both vessels seen, the legal presumption is *prima facie* that the fault was in the vessel sailing free. This presumption is increased by proof of the absence in the latter of any lookout other than the captain standing near the wheel.

2. SAME—PREPONDERANCE OF PROOF.

The evidence of neither of the persons on deck of the latter being obtained,— the captain having been knocked overboard and drowned at the time of the collision, and the wheelsman having died before the trial,—and the only evidence in her behalf being that of the captain of another schooner about half a mile ahead, sailing in the same direction, who testified that the schooner, sailing close-hauled, just before she was reached luffed up into the wind so that her sails shook, and then, paying off, ran down on the other schooner, and several witnesses from the schooner close-hauled contradicting the alleged luff, and giving a consistent and probable narrative involving no fault on their part: *held*, that the luff alleged was improbable under the circumstances, and not sustained by the weight of proof; that the libelants had not overcome the presumption against them by any preponderance of proof; and that the libel must be dismissed.

In Admiralty.

*Scudder & Carter* and *Geo. A. Black*, for Carll, etc.

*Benedict, Taft & Benedict*, for the Wiman.

BROWN, J. The above five cases grow out of a collision which happened in Long Island sound, near Little Gull island, at about 11 o'clock of the night of October 26, 1881, between the schooner P. H. Wheaton, bound to the eastward, and the schooner Erastus Wiman, bound westward, whereby the former was immediately sunk. The captain of the Wheaton was knocked overboard by the collision and drowned. The third libel above named was brought by his administratrix to recover damages on account of his death. The two libels first named were brought by the owners of the Wheaton and her cargo, respectively; the fourth was brought by the owners of the Wiman to recover their damages; and the fifth is a proceeding by the owners of the Wheaton to limit their liability. During the day preceding the collision it had been blowing a gale from the north-west, and the Wiman had been at anchor in the sound. She was a three-masted, center-board schooner, of 597 tons register. At about 6 P. M., the

gale having somewhat abated, she resumed her voyage to the westward, and about 11 o'clock was near Little Gull island and Fisher's island. The wind was blowing fresh from the north-west, slightly variable, and the sea was rough. Some 10 or 15 minutes before the collision, the Wiman had made a short tack to the northward, and was then put upon her course, W. ½ S., sailing close-hauled, full and by. The Wheaton was a three-masted schooner of 242 tons register, and was sailing, probably, upon a course of about E., or E. by S. The only persons on deck at the time of the collision were her captain and the wheelsman. The captain stood by the wheel, and was the only lookout. She had no lookout forward. The wheelsman died before the case was tried, and his evidence was not taken. The other three who composed her crew were below, and did not come on deck until after the collision. The Wheaton had been sailing during the afternoon and evening in company with the schooner Witch Hazel, which was about half a mile ahead of the former. No direct evidence of importance being obtainable from those on board the Wheaton, the principal evidence on her part is from the captain of the Witch Hazel.

The contention of the libelants is that the Wheaton was considerably to leeward of the Witch Hazel; that when the captain of the latter observed the two colored lights of the Wiman, and that the two vessels were approaching each other nearly head and head, he starboarded his wheel in order to pass to windward; and that had the Wiman kept her course she would have passed easily between the Witch Hazel and the Wheaton, namely, to leeward of the former; but that just before reaching the Witch Hazel the Wiman luffed up into the wind, crossing the bows of the Witch Hazel and compelling the latter to pass to leeward of the Wiman under a sudden port wheel; and that the Wiman, by this luff, came up into the wind so that her sails shook, her headway was lost, and, in getting upon her course again, she paid off so much to leeward as to run into the Wheaton.

The captain of the Witch Hazel, in substance, gives this account of the matter: He says that he first saw the two colored lights of the Wiman about a half point on his starboard bow, a half mile or more ahead; that his previous course was E. by S., ½ S.; that he then put his vessel to port a point and a half, so that she was sailing about E.; but as he found that the Wiman was coming too close to him, he put his vessel to port another half point, and that very shortly afterwards the green light of the Wiman was shut in, and she shot across his bows with her sails shaking; that he immediately ported and passed within a few feet of her to leeward; and that in getting on her course again the Wiman paid off broadly, as above stated.

Three witnesses from the Wiman, on the contrary, testify that they were sailing W. ½ S., full and by, after the short tack to the northward above referred to; that they saw the two lights of the Witch

Hazel from half a mile to a mile distant, a little on their port bow; that she remained so all the time until she passed to leeward of them, and that there was no luff or change in the course of the Wiman whatever, until after passing the Witch Hazel, a few moments before the collision, when the wheel of the Wiman was put hard a-port, *in extremis,* to avoid the collision; that shortly after seeing the two lights of the Witch Hazel, the green light of the Wheaton was seen nearly ahead, or a little on the starboard bow. Two of her witnesses say that the green light continued to broaden off on the starboard bow until it had reached, one witness says, one or two points, and the other says three points, on the Wiman's starboard bow, after she had passed the Witch Hazel; that not long before the collision the Wheaton suddenly changed her course, under a port wheel, so as to pass to port of the Wiman; showed her two lights for a few seconds, then shut in her green light and showed her red light; that the Wiman then put her helm hard a-port; and that the collision happened a few seconds afterwards, the port bow of the Wiman striking the port quarter of the Wheaton.

From the lights of the Wiman it was manifest to both the other vessels, from the first, that the Wiman was sailing close-hauled; and the others were bound to keep out of her way. A collision having happened, the presumption is against the Wheaton. The burden of proof is upon her to show by a preponderance of evidence some fault of the Wiman. The presumption against the Wheaton is increased in this case by the absence of any proper lookout on deck. The only evidence upon which she can rely is that of Capt. Arnold, of the Witch Hazel. It is impossible for me to hold that his evidence alone is sufficient to overcome the direct and positive evidence of the three persons who were on board the Wiman, who testify that there was no such luff as supposed. The testimony of these three persons, though varying somewhat, does not differ more than might be expected from the different time or manner of observing by witnesses who are not swearing to a concerted story.

Upon the courses given for the Wiman and the Witch Hazel, the positions in which it is testified that their lights were first seen to each other, respectively, are not strictly reconcilable with each other. Their courses as given varied two points from opposite. If this were so, the two lights of the Wiman could not have been seen half a point to starboard of the Witch Hazel, and the Witch Hazel's two lights at the same time have been seen a little on the port side of the Wiman. It would require a variation of about two points by one of the vessels, or by both of them together, to make this possible. The Wiman alone could not vary so much to the northward, as the wind would not have permitted it; the Witch Hazel, on the other hand, with the wind nearly aft, and yawing easily, might have been going considerably to the windward of her supposed course at the moment when the Wiman was first seen, as her captain says, half a point on

the Witch Hazel's starboard bow. If the latter were at that moment thus yawing to the northward, that would explain why, when the captain ordered her course due east, that supposed change did not shortly cause the red light of the Wiman to be shut in, or the green light only of the Witch Hazel to be seen on the Wiman, as he intended. The evidence from the Wiman, however, is unanimous that the two lights of the Witch Hazel continued to be seen all the time until she passed to port. Not only is it improbable that the Wiman, sailing close-hauled, should have luffed up into the wind, if the Witch Hazel were passing to windward of her; but if, as Capt. Arnold supposed, he had changed his course so as to show his green light only, it would be utterly incredible that the captain of the Wiman, seeing only the green light, and seeing that to windward also, should have luffed so as to go apparently directly into her. The rule so often applied in such cases should therefore be applied in this: that superior credit must be given, in regard to a vessel's own movements, to the testimony of those on board of her, where it is probable and consistent, and not overborne by any decided weight of other testimony. The appearances testified to by Capt. Arnold I have no doubt were caused mainly by the changes in his own position.

The testimony of Capt. Arnold is altogether insufficient to establish how far the Wheaton was to leeward of his own course. In one place he estimates it to be a quarter of a mile; in another place he calls it a short distance to leeward; but the precise course that the Wheaton was keeping is not known. Capt. Arnold says that she was going somewhat more to the northward than he. Whatever her distance to leeward was at some previous time, according to his testimony, therefore, it must have been constantly lessening; and nothing trustworthy can be gathered from his general estimate under such circumstances. Counsel for the libelants claim that if the Wheaton were to leeward of the Witch Hazel her lights could not have been seen from the Wiman, as testified to by the witnesses on the Wiman, to the windward of the Witch Hazel, so as to be more upon the Wiman's starboard bow than the Witch Hazel's lights. Considering, however, that the Wheaton was half a mile astern of the Witch Hazel, and that the courses of the latter and the Wiman varied two points from opposite, it will be found by placing models on a chart that the Wheaton might be some considerable distance to leeward of the course of the Witch Hazel, and yet, as seen from the Wiman, be more on the latter's starboard hand than the Witch Hazel, precisely as the Wiman's witnesses testify. The testimony of Capt. Arnold, moreover, that the Wheaton was sailing more northerly than he, accords with the testimony of the witnesses from the Wiman, that they saw only the green light of the Wheaton; and if her green light only were visible, and her course was more northerly than that of the Witch Hazel, the Wheaton would naturally and necessarily broaden off more to starboard, as two of the witnesses from the Wiman state. So that

the account given by the latter seems to me confirmed in part by Capt. Arnold.

What may have been the particular cause which induced the Wheaton to port her wheel, when she was to starboard of the Wiman, cannot be known, in the absence of all testimony on that subject. That she did port is testified to by all the witnesses, including Capt. Arnold; the libel also alleges it.

Without adverting to the testimony as to the amount which the Wiman would pay off before she could regain her course, after luffing up into the wind and losing her headway, it is sufficient to say that I cannot regard such a luff as established. In any case, it would be almost incredible that a schooner sailing on the wind, and having the right of way, should without apparent necessity have luffed so as to lose all headway. But if she had, the vessel would have been a very poor sailer, or very badly handled, that would not have regained her course in far less distance than the half mile which separated the Witch Hazel and the Wheaton.

The evidence on behalf of the Wheaton seems to me totally insufficient to overcome the presumptions which are against her; and the libels on her behalf must therefore be dismissed, with costs. *The E. H. Webster*, 18 Fed. Rep. 724; *The City of Chester*, Id. 603; *The Albert Mason*, 8 Fed. Rep. 768; S. C. 2 Fed. Rep. 821.

The cross-libel in favor of the Wiman is rendered unavailing through the loss on the Wheaton. The proceeding to limit liability, which has been instituted by her owners, is sufficient to prevent any decree against them in this case.