## LARSEN *et al. v.* THE MYRTLE.

*(District Court, N. D. Illinois.* October 20, 1890.)

1. COLLISION—SAILING VESSELS APPROACHING END ON.

     About 1 o'clock of a clear morning, on Lake Michigan, the schooner L., close-hauled on the starboard tack and headed S. ½ W., sighted and was seen by the schooner M., headed N. by W., with the wind free. The M. put her helm hard-a-port, and let go her main sheet, and swung six or seven points to starboard. When the vessels were five or six lengths apart, the L. starboarded and swung to port, until she was across the bows of the M., which struck her forward of the fore rigging. *Held* that, whether the vessels were approaching end on or on converging lines, the L. should not have starboarded, and the collision is chargeable to her fault.

2. SAME—INSUFFICIENT LOOKOUT.

     It was negligence to allow the wheelsman of the L. to go below after the M. was sighted, and to send her lookout to the wheel, leaving the captain, the only other man on deck, to perform the double duty of officer of the deck and lookout.

In Admiralty.

*Schuyler & Kremer,* for libelants.

*W. H. Condon,* for respondent.

BLODGETT, J. Libelants, as owners of the **schooner** Lookout, bring this suit to recover damages sustained by their schooner from a collision

with the schooner Myrtle, on the waters of Lake Michigan, on the 1st day of June, 1888, charging that the collision came about solely from the negligent management of the Myrtle, while, by the answer, the owners of the Myrtle charge that the collision occurred solely from the fault of those in charge of the Lookout, and they file a cross-libel to recover damages sustained by the Myrtle from the collision. The proof in the case is all from the decks of the two vessels, and is much less conflicting than usual in such cases. It is conceded that the collision occurred a few minutes after 1 o'clock in the morning of the day mentioned; that it was on the waters of Lake Michigan, six or eight miles from the west shore of the lake, in the vicinity of Sheboygan, Wis.; that the night was clear, with no fog or haze upon the water; that the Lookout was heading about S. ½ W., with a six-mile breeze; that the course of the Myrtle was about N. by W.; and that each vessel sighted the other about 15 minutes before they struck; that soon after they sighted each other the wheel of the Myrtle was put hard a-port, and the main sheet let go, and she swung off to starboard; that when the vessels were five or six lengths apart the wheel of the Lookout was put to starboard, and she swung to port sufficiently so that when the vessels came together she was across the bows of the Myrtle, although the Myrtle had swung six or seven points to starboard; and that the Myrtle struck the Lookout just ahead of her fore rigging. There is some conflict as to the direction of the wind. The witnesses from the Lookout say it was W. S. W., while those from the Myrtle say it was W., or W. by N. The witnesses from both vessels say they were sailing by the wind, and I conclude that neither was paying very close attention to their compass course, but were simply keeping a good full with the wind probably from about due west, as the Lookout was bound for Chicago and the Myrtle was bound from Chicago for a port inside of Green Bay, so that they were not particular to a point or two as their compass course, so long as they made the best use of the wind, and held the general courses required to take them to their respective destinations. The effort on the part of the respondent at the hearing was to show that the vessels were approaching each other upon converging or cross-lines, and not end on, or nearly end on; but I do not deem the question whether they were sailing on converging lines, or approaching each other end on, or nearly end on, very material, as the only difference in the duty of the two vessels was that, if approaching each other end on, or nearly so, both vessels, under the sailing rules, should have put their wheels to port, and kept away to starboard; while, if approaching each other on converging lines, the vessel which had the wind free should have kept out of the way, and the vessel which was on the starboard tack should have kept her course. Now, there can be no doubt from the testimony of the Lookout's witnesses that she was on the starboard tack, close-hauled, while the Myrtle had the wind free; hence, if they were meeting end on, or nearly so, it was the duty of those in charge of the Lookout to have gone off to the starboard, and, if approaching on converging lines, then to have kept her course. But she did neither; but, on the contrary, after the Myrtle had put her wheel to port, and gone off to starboard, as it was her duty to do, the Look-

out's wheel was put to starboard, thereby throwing her to port, so that she was brought across the Myrtle's bows. I conclude from the proof that there was not to exceed a point's difference in the course of the vessels, and that they were approaching each other nearly end on; and that the plain duty of those in charge of the Lookout was to have ported their wheel, which they did not do, but, on the contrary, starboarded their wheel; and that the collision was brought about by their neglect of their duty and violation of the sailing rules in that regard. But I am also fully satisfied that, if the Lookout had held her course, instead of going to port, there would have been no collision, so that it seems to me of very little consequence whether the vessels were meeting on converging lines, or end on, as the Lookout was at fault in either dilemma.

It also appears from the proof that, after the light of the Myrtle had been seen on board the Lookout, her captain allowed his wheelsman to go below to get lunch, while the lookout was sent aft to take the wheel, and, as the full watch consisted of only the captain and two men, this left the captain to perform the double duty of officer of the deck and lookout, which, with another vessel approaching, and in close proximity, was in itself an act of negligence, as it left his vessel practically without a lookout. *The Ottawa,* 3 Wall. 268; *The Hypodame,* 6 Wall. 216. Had there been a vigilant and competent lookout on libelant's vessel, charged with no other duty, it is probable that the captain would have been kept constantly advised of the situation of the Myrtle as the vessels neared each other, and the collision averted. While embarrassed by the double duty he had assumed, the captain of the Lookout committed the fatal error of going to port when he should have gone to starboard. The original libel is dismissed, and a decree must be entered on the cross-libel, finding the Lookout at fault, and decreeing damages in favor of cross-libelants.