## THE CHARLES H. TRICKEY.

### SARGENT et al. v. SARGENT.

(Circuit Court of Appeals, First Circuit. February 16, 1895.)

No. 86.

1. COLLISION BETWEEN SAILING VESSELS—DUTY TO KEEP AWAY.
    Where a schooner sailing closehauled, with the wind on her starboard side, collided with a vessel sailing free, with the wind on her port side, *held*, that the latter was solely in fault,· it appearing that she violated ·her duty to keep out of the way, by luffing so as to strike the former, which held her course until the instant before collision.

2. SAME—EVIDENCE.
    Where there is an irreconcilable conflict in the evidence of the crews of the colliding vessels, the testimony of disinterested witnesses on other vessels, in a position to see what took place, should govern the case.

Appeal from the District Court of the United States for the District of Maine.

This was a libel by Wyer G. Sargent and others, owners of the two-masted schooner Governor, and Wyer G. Sargent & Sons, as owners of her cargo, against the three-masted schooner Charles H. Trickey (Horace M. Sargent, claimant), to recover damages for a collision. The district court dismissed the libel, with costs, and the libelants appeal.

Eugene P. Carver (Edward E. Blodgett, on the brief), for appellants.

Benjamin E. Thompson, for appellee.

Before PUTNAM, Circuit Judge, and NELSON and ALDRICH, District Judges.

NELSON, District Judge. This was a libel for a collision between the two-masted schooner Governor and the three-masted schooner Charles H. Trickey, which occurred off the coast of Cape Cod, in the vicinity of Nauset Light, on the evening of the 25th of August, 1893, and resulted in the sinking of the Governor and the total loss of the vessel and her cargo. The Governor was sailing closehauled, with the wind on her starboard side. Her course was S. by W. The Charles H. Trickey was running free, with the wind on her port side, and she was steering N. by W. In these positions of the two sailing vessels, the Governor closehauled, with the wind on the starboard side, and the Charles H. Trickey running free, with the wind on the port side, the right of way belonged to the Governor, under clauses (a) and (c) of article 14 of the sailing rules, and the Charles H. Trickey was bound to keep clear of her, or show a sufficient excuse for not doing so. She alleges as such excuse that the relative positions of the two vessels were such that, if both had held their courses, they would have gone clear; but that immediately before the collision the Governor, being the leeward vessel, suddenly changed her course by luffing across her bow; that she made no change of course; and that this action on the part of the Governor was the sole cause of the collision. The contention on the part of the Governor, in which she is sustained by the testimony of all the men on board of her, is that she made no change of course whatever before the collision; that the Charles H. Trickey was seen on her port or lee bow, showing her green light, she showing her red light to the Charles H. Trickey; that the latter vessel then kept off showing her red light, and as she came nearer, and was only a short distance away, she luffed and showed her green light again, and on that course struck the Governor on the port side. On the part of the Charles H. Trickey, it is claimed, and in this she is borne out by the testimony of the men on board, that the Governor was on her starboard or lee bow, showing her green light; that the vessels were passing green to green, so that no collision was possible if each had held her course; that she made no change of course, and none was necessary on her part in order to go clear; that, immediately before the vessels struck, the Governor changed her course and luffed across her bow; and that this was the cause of the collision.

If the judge of the court below had decided this case upon the degree of credibility to be given to the witnesses from the two vessels called by the respective parties, we should have no thought of disturbing his finding in favor of the Charles H. Trickey. But the court below, without attempting to reconcile the opposing testimony, or to decide which set of witnesses was the more truthful and reliable, based its decision upon the testimony of the master and mate of the Break of Day, a schooner which was sailing in company with the Governor, and in the same direction, and was at the time a short distance to the leeward of the Governor, in a position where in the dusk of the evening the colliding vessels were in plain sight. There is no question made as to the opportunity which these men had to witness the occurrence, or as to the reliability of their testimony, each party relying upon their testimony in support of their respective claims. The court below held that their statements of what they saw confirmed the theory of the Charles H. Trickey. We do not so read their depositions. They both contradict the men on the Charles H. Trickey and confirm those on the Governor, in respect to the change of course on the part of the Charles H. Trickey. They both agree that that vessel, as she approached the Governor, luffed two points, and on that course struck the Governor. Neither of them observed any change of course by the Governor. It is true they say that they saw the sails of the Governor shaking in the wind, but we think it is manifest from their depositions that the shaking of the sails was at the very moment before the blow, after the wheel was abandoned and the vessel would necessarily come up into the wind. We think the only result of the testimony of these two men is to confirm the Governor, and contradict the theory advanced by the Charles H. Trickey. The Governor's case is also confirmed by the master of the schooner Nellie Grant, which was sailing in the same direction and on the same course with the Charles H. Trickey, and which passed to the leeward the Governor going north a few minutes before the collision. This witness did not see the collision, but he looked back after the collision, and saw the Charles H. Trickey near the place where it occurred. This witness states that the Charles H. Trickey was sailing right in the wake of the Nellie Grant, and this would bring the Charles H. Trickey to the leeward of the Governor, which is entirely in conflict with the theory advanced by the Charles H. Trickey, that she was the windward vessel. We agree that, in the sharp conflict of the evidence coming from the crews of the two vessels, the testimony of the disinterested witnesses from the Break of Day and Nellie Grant should govern the case, and this testimony is clearly and explicitly in favor of the Governor. The angle of two points in the courses on which the vessels were sailing would necessarily bring the green light of the Charles H. Trickey on the port bow of the Governor, if the latter was the windward vessel. The lookout on the Charles H. Trickey was a boy 16 years old, with little experience at sea. The two vessels were approaching each other at a speed of 12 or 13 knots an hour,—a mile in five minutes or less. It is much

easier to believe that the light seen over the starboard bow of the Charles H. Trickey was the green light of the Break of Day, which, upon the testimony of her master, was an eighth of a mile to leeward of the Governor, and in the exact position in which the evidence of the Charles H. Trickey places the green light of the Governor, or that the men in charge of the navigation of the Charles H. Trickey failed to see in season the red light of the Governor, or that they did not make sufficient allowance for the rapidity of the approach of the two vessels, than that the Governor, under the charge of an experienced and intelligent master, and having the right of way, should luff an eighth of a mile out of her course across the bow of the other vessel, in the manner claimed here. We are of opinion that the collision was caused solely by the fault of the Charles H. Trickey.

Reversed, and the case remanded, for further proceedings in conformity with this opinion.