THE RICHARD F. C. HARTLEY.

(District Court, E. D. Pennsylvania. August 3, 1903.)

No. 55.

1. COLLISION—SAILING VESSELS CROSSING—VIOLATION OF RULES.
     A collision occurred off the coast of South Carolina in the night between the United States bark Chase and the schooner Hartley, on crossing courses. Each vessel saw the other's lights when a mile or more distant. The Chase was sailing close hauled, while the Hartley was running free, and was therefore bound by the rules to keep out of the way, and to avoid crossing ahead of the Chase; there being no circumstances to prevent. The evidence indicated, however, that she attempted to cross ahead, and thus brought about the collision. The Chase kept her course and speed, as required by the rules, until a collision became imminent, when she changed her course, in an attempt to prevent it. Held, that the Hartley was solely in fault.

In Admiralty. Suit for collision.

James B. Holland and J. Whitaker Thompson, for libelant.
Henry R. Edmunds and John A. Toomey, for respondent.

J. B. McPHERSON, District Judge. The Salmon P. Chase is a bark owned by the United States, and used as a practice ship in the revenue service. In the early morning of May 6, 1897, a collision occurred between the bark and the schooner Richard F. C. Hartley on the Atlantic ocean, about 50 miles east of Charleston, S. C., as a result of which the bark received a good deal of injury. The collision took place between half past 1 and 2 o'clock, the weather being clear, and both the wind and the sea being moderate. There is some dispute concerning the exact direction of the wind, but I do not think the decision of the case depends upon the determination of this controversy. All the witnesses agreed that the wind was blowing from a northerly direction, but they differ upon the question whether it blew exactly from the north, or from a point or two east or west of north. Perhaps the moderate discrepancy of the testimony may be accounted for by the fact that the witnesses speak of the two hours from midnight to the time of collision, and evidently during that period different observers at different moments might have correctly noticed that the wind was blowing from somewhat different points. The Chase was under easy sail, and was proceeding from Charleston to Baltimore upon a course about east northeast, sailing by the wind, close hauled on the port tack, and was properly manned and equipped. She had a cadet and a seaman on

the lookout upon the forecastle, and there were also upon deck at the same time a gunner, who was on the main deck in charge of the watch, a second lieutenant in the revenue service, who was in command of the vessel after 12 o'clock, a cadet, who was the "gentleman of the watch"—apparently a general utility man—and a third cadet, who was at the wheel. So far as appears, all these persons were competent, and I see no reason to doubt that they discharged their duties faithfully. The Hartley was sailing light, bound upon a voyage from Providence, R. I., to Jacksonville, and was going free before the wind upon the starboard tack. About half past 1 the lights of the Hartley were discovered by the lookout on board the Chase about a mile or a mile and a half distant, bearing from one to two points, or thereabouts, on the port bow. Both her lights were occasionally seen, and sometimes her red light only was visible, but for the most part she displayed her green light alone. It is manifest, therefore, that the vessels were upon crossing courses, and, as the Chase was close hauled, while the Hartley was sailing free before the wind, it was the duty of the schooner to keep out of the road. Article 17 of the Act of Aug. 19, 1890, c. 802, (26 Stat. 320), provides for such a situation in the following language:

"Article 17. When two vessels are approaching one another so as to involve risk of a collision, one of them shall keep out of the way as follows, viz; (a) A vessel which is running free shall keep out of the way of a vessel which is close hauled."

Article 22 goes on to enjoin:

"Every vessel which is directed by these rules to keep out of the way of another vessel, shall, if the circumstances of the case admit, avoid crossing ahead of the other."

And article 21 defines the duty of the other vessel as follows:

"Where, by any of these rules, one of two vessels is to keep out of the way, the other shall keep her course and speed."

It is evident, therefore, that, as the Hartley was sailing free before the wind, it was her duty to keep out of the way of the Chase, while it was the duty of the Chase to maintain her course and speed. In keeping out of the way of the Chase, the Hartley was also bound to avoid crossing her bows, if the circumstances of the case permitted the schooner to avoid a course that is usually so full of danger. I have carefully examined the testimony concerning the maneuvers of the Hartley, which is, as usual, somewhat conflicting, and have come to the conclusion that she clearly failed in her duty. Her lookout either failed to discover the lights of the Chase in time to enable the proper course to be pursued, or, if the Chase was seasonably discovered, the Hartley endeavored to cross her bows, and thereby brought about the dangerous situation from which the collision resulted. I think the latter supposition is the more probable explanation of what took place. The schooner's witnesses testify that the lights of the bark were seen three or four miles away, but I do not believe them when they say that they saw the green light almost all the time. If this were true, a collision would scarcely have been possible, unless the bark had changed her course, and this I am

satisfied she did not do until a few minutes before the vessels came together. I think the Hartley saw both lights of the Chase when the vessels were more than a mile distant, and it was then the schooner's duty to pass to windward of the bark,—a course that was safe and easy,—and not to attempt to cross her bows. But the testimony leaves me in little doubt that the Hartley persisted in the attempt to cross to leeward of the Chase, believing that she had time and room enough for this maneuver. As the vessels approached each other, however, and it was discovered that a collision threatened, the Hartley gave the order to luff, apparently for the purpose of making the tardy effort to pass to windward. Up to this time, the Chase had maintained her course and speed, but, believing correctly that the Hartley was endeavoring, in the first instance, to cross her bows, she had just put her helm hard astarboard, in order to give the Hartley as much room as possible to leeward. When it was observed, however, that the Hartley was about to luff, the helm of the Chase was ordered hard aport, but before the order could be fully executed, the Hartley resumed her attempt to pass to leeward, and the helm of the Chase was again put hard astarboard. By this maneuver she was brought up into the wind with her sails shaking, and at this juncture the vessels came together; the starboard bow of the Hartley striking the starboard bow of the Chase, scraping also along the side, and doing a good deal of damage.

Under these circumstances, I think there can be no question about the sole liability of the Hartley. She was the vessel sailing free, and violated her duty to keep out of the way of the vessel close hauled. This was a fault for which she should be held liable, as a number of cases have decided. Bentley v. Coyne, 4 Wall. 509, 18 L. Ed. 457; The Charles H. Trickey, 66 Fed. 1020, 14 C. C. A. 225. Moreover, even if the testimony was more evenly balanced, it would still be my duty to find the Hartley liable, under the rule that where a collision occurs between two sailing vessels, one close hauled and the other sailing free, the presumption is that the vessel sailing free was at fault, and the burden of proof is upon her to remove that presumption. She is bound to show clearly that the other vessel was at fault, before her own prima facie liability is overcome. Carll v. The Wiman (D. C.) 20 Fed. 245; Thompson v. The Republic, 23 Wall. 20, 23 L. Ed. 55; The Rabboni (D. C.) 53 Fed. 948. The evidence not only does not overcome the presumption, but, in my opinion, shows with distinctness that the Hartley was at fault from the beginning, and that her fault is probably attributable to the belief that she had ample space and time to cross the bows of the Chase, although she was forbidden by the sailing rules to risk the attempt.

A decree may be entered in favor of the libelant, with a reference to a commissioner, if the parties should be unable to agree upon the amount of damage.