# PORTO RICO
# FEDERAL REPORTS

JACINTO. PIZARRO PARRILLA, OWNER OF THE SLOOP "REGALO," Libellant,

*v.*

THE SCHOONER "ESPERANZA," HER TACKLE, ETC., Dfts.

San Juan, Admiralty, No. 1142.

COLLISION.

Admiralty—Vessel Overtaking Another.
    1. The rule is that a vessel overtaking another shall keep out of the way of the overtaken vessel.

Admiralty—Measure of Damage.
    2. The vessel at fault shall be responsible for the damage caused to the vessel not at fault, and to her cargo and seamen.

Admiralty—Towing Vessel—Allowance.
    3. A launch towing a disabled vessel into port will be allowed the usual compensation for such service.

Admiralty—Damages—Cost of Repairing.
    4. Where a vessel is not lost but only damaged and capable of being repaired, she will be allowed only a sum necessary to make her serviceable again.

    X. Porto Rico.—1.

Parrilla v. The Schooner "Esperanza."

Admiralty—Damages—Necessary Losses of Captain and Others.
  5. In accordance with the general principle announced in Newell
  v. Norton, 3 Wall. 257, the necessary losses of the captain and others
  aboard the damaged vessel will be allowed.

Admiralty—Freight—Allowance.
  6. It seems that the damaged vessel is entitled to the amount in
  possible freight lost between the time of the accident and the time
  she is put in commission; but where freight is claimed only for the
  period between the accident and the filing of the libel only this
  amount will be allowed.

Opinion filed March 23, 1917.

———

*Mr. E. H. F. Dottin* proctor for libellant.

*Messrs. Frank Antonsanti* and *Damian Monserrat* proctors
for "Esperanza."

HAMILTON, Judge, delivered the following opinion:

Libel in this case was filed June 23, 1916, alleging that the
sloop Regalo and the schooner Esperanza left the port of San
Juan early in the morning of May 14, 1916, both on a voyage
towards the east end of the Island, and came into collision off
Castillo San Geronimo, in which the sloop received injuries
which caused her to founder. Damages are claimed for $724.40
for injury to boat, cargo, and effects of mariners. After due
monition and attachment, the owners of the schooner, upon giv-
ing bond, were allowed to intervene in the place of the schooner.

Upon the trial of the case, February 7 and 8, 1917, the evi-
dence was conflicting, but seemed to show that the two boats left
the harbor of San Juan about 6 o'clock in the morning, the Espe-

ranza in the lead. That opposite the Puntillo or Marina the sloop, being lighter, passed the Esperanza on the left and continued in the lead till the boats passed El Morro. The sloop was bound for Rio Grande and had no necessity to go far out to sea. The schooner was bound for Fajardo, somewhat further to the east. The wind was southeast and light. About 8 o'clock the master of the sloop thought he was far enough out and should tack in towards land. How far he was at that time in the lead does not appear, but it hardly could have exceeded 100 yards or so. He accordingly luffed, but the wind, being light, did not readily fill his sail, and, while the sail was still flapping, or at least before the sloop had got headway again, the schooner struck her, the bowsprit of jib boom tearing a hole in the mainsail, and the schooner itself striking the sloop a little forward of the stern on the starboard side. The schooner captain had not changed his course, and at the time of the collision seems to have done nothing in the way of changing his tiller. When the collision seemed imminent, he rushed forward and aided in pushing the sloop off. There was confusion for a few minutes, the crew of the sloop jumping aboard the schooner, and one man remained there. The captain of the sloop stuck to his post, and took back on board a boy who was acting as cook. There did not appear at the time any great damage done to the sloop, and its captain acquiesced in the suggestion of the captain of the schooner to put back to San Juan. Shortly afterwards,—as to length of time there is considerable discrepancy,—the sloop filled, turned over on her side, and so remained until those on board were rescued. The schooner seems to have seen nothing of this and went on her way to Fajardo. The signal man on San Cristobal, however, saw the plight of the sloop, signaled to ves-

sels in the harbor, and a launch went out and rescued the two men from the sloop. Subsequently the sloop captain made an arrangement with a gasolene launch, and the sloop, on her side, was towed into port.

There was no serious contest as to the amount of the damages. The sloop was shown to be worth about $200 or $250. The loss of freight for the time the boat was disabled was about $25 a week, and it is shown the bulk of the cargo floated off. There was no satisfactory showing, however, as to its value. The clothing of the captain and crew was claimed for, but the details are not satisfactory to the court. The amount for towing as finally agreed on was $100, although there is testimony that the usual charge for such service was $75. While the boat was disabled by the blow and filled, it was not disabled beyond repair. The testimony in regard to repair is that the material would cost about $66, and the labor, including calking, would be $86.

So much for the facts. The law will require fuller consideration.

1. The Regalo had got in the lead, and was endeavoring to tack on a course which would have carried her across the Esperanza's bow. It can hardly be contended, however, that the Regalo had ceased to be anything except a leading vessel. Her tack was not completed, her sails had not filled, and she was what is known as in stays. She cannot be considered, therefore, as a crossing vessel, and the case must be decided upon the theory that she was leading and the Esperanza was following.

There is no doubt that the vessel running free must get out of the way of the one running cross hauled. The Robert B. King, 50 Fed. 781; The B. C. Terry, 30 Fed. 711; Larsen v.

The Myrtle, 44 Fed. 779; The Richard F. C. Hartley, 124 Fed. 708; The Eagle Wing, 135 Fed. 826. But the facts do not seem to bear out this theory. Both the Regalo and the Esperanza were running on the same tack, the Regalo slightly in the lead, until the Regalo attempted to tack. Had she succeeded in tacking, she would have been running free, that is, more or less before the wind. But she did not succeed in tacking. Before she got under way again the Esperanza was on her. The crossing rule would not therefore apply because the Regalo had not got to the crossing stage.

There are navigation rules covering the open sea and also inland waters, covering steam vessels and sailing vessels. The principle does not seem to vary greatly in these different instances. The rule as to overtaking vessels is: "Notwithstanding anything contained in these rules, every vessel overtaking any other shall keep out of the way of the overtaken vessel. Every vessel coming up with another vessel from any direction more than two points abaft her beam, that is, in such a position, with reference to the vessel which she is overtaking, that at night she would be unable to see either of that vessel's side lights, shall be deemed to be an overtaking vessel; and no subsequent alteration of the bearing between the two vessels can make the overtaking vessel a crossing vessel within the meaning of these rules, or relieve her of the duty of keeping clear of the overtaken vessel, until she is finally past and clear. As by day the overtaking vessel cannot always know with certainty whether she is forward of or abaft this direction from the other vessel, she should, if in doubt, assume that she is an overtaking vessel and keep out of the way." International Rules, 26 Stat. at L. p. 320, chap. 802, § 1, art. 24, Comp. Stat. 1916, § 7863, Inland

Rules, 30 Stat. at L. p. 96, chap. 4, § 1, art. 24, Comp. Stat. 1916, § 7898.

Under this the overtaking, and not the crossing, rule prevails when there is doubt. Robinson v. Detroit & C. Steam Nav. Co. 20 C. C. A. 86, 43 U. S. App. 190, 73 Fed. 883. The hindmost vessel must look out for the other coming about, for this is a necessary operation to be performed at any time the wind and weather call for it; and which can be more readily observed by the vessel behind than notice can be given of it. Sight must take the place of notice. The Nellie D. 5 Blatchf. 245, Fed. Cas. No. 10,097. In case of danger where vessels are on the same tack, the overtaking vessel must keep off and pass to leeward. She must even come about if by keeping on her course there would be risk of collision. The Peter Ritter, 14 Fed. 173. The following vessel must not speculate, but do everything to avoid danger. The Coleman, Brown, Adm. 456, Fed. Cas. No. 2,981. The duty continues until danger is past. The Narragansett, 10 Blatchf. 475, Fed. Cas. No. 10,018.

2. The Esperanza being, therefore, at fault, and there appearing to have been no fault on the part of the Regalo, the Esperanza must be held to be responsible for the damages which ensued. This would include the damage to the ship, cargo, and seamen. There is no allegation in the libel, however, as to the cargo, and so whatever happened to that may be disregarded. The damages to be considered are those to the vessel and to the persons on her. Newell v. Norton, 3 Wall. 257, 18 L. ed. 271.

3. There seems to be no reason, from the evidence presented, for thinking that the master of the Esperanza did not perform all the duties incumbent upon him. There appeared to be no reason to suppose that the Regalo would sink, although it was

Parrilla v. The Schooner "Esperanza."

wise enough for her to go back to San Juan to repair her damages. The lookout from the fortress San Cristobal, however, saw the boat after it had capsized, and the signal was communicated to a launch in the bay. This went out and brought the Regalo into port, making a charge of $100 for the service. There is nothing to show that the service was dangerous or the sea unusually rough, and there is testimony that the usual charge for such service was $75. It might have been necessary in an emergency to get a boat for a hundred dollars, but nothing of the kind appears in the case. An allowance of $75 is therefore made for the service of towing in the Regalo.

4. The value of the Regalo is not material. She seems to have cost some $250, and as much more was put on it at different times. She does not seem to have been lost, and so what is material is the expense of putting her in good order again. The testimony seems to show that $66 was spent for material and $86 for labor for this purpose, making a total of $152. This is allowed. So far as appears the Regalo could have been and was repaired so as to be serviceable.

5. Under the general principle announced in the Newell Case, the necessary losses of the captain and other persons on the Regalo were a part of the damages which can be recovered. The evidence is not clear as to this, and upon the whole $50 would seem sufficient to cover the item in question, and so much is allowed, to be distributed proportionately among the losers.

6. Freight is claimed for the time between the accident and the filing of the libel, say about six weeks. The amount claimed is $130, and about $100 seem to be proved. It might be that damage should be estimated up to the time the boat was put in commission again, but this is not claimed in the libel.

Parrilla v. The Schooner "Esperanza."

The total amount to be allowed, therefore, is $377, and a decree will be entered accordingly.

It is so ordered.