THE GIOVANNI v. CITY OF PHILADELPHIA.

(District Court, E. D. Pennsylvania. January 2, 1894.)

No. 20 of 1893.

1. COLLISION—TUG AND TOW—VESSEL AT ANCHOR.

A tug which, owing to the lack of a proper lookout, takes her tow so near to an anchored vessel as to create a situation of peril, renders her owners liable to the latter for a collision with the tow immediately resulting from the breaking of the towing hawser.

2. MUNICIPAL CORPORATIONS — POWERS — LIABILITY FOR COLLISION WITH ITS TUGS.

A city which, pursuant to its charter powers, engages in the business of towing vessels for profit, is liable for a collision caused by the fault of its tug.

In Admiralty. Libel by Dominico Gavagnin, master of the bark Giovanni, against the city of Philadelphia, to recover for a collision alleged to have been caused by the negligence of the latter's tug. Decree for libelant.

Henry R. Edmunds, for libelant.

Howard A. Davis and Chas. F. Warwick, for respondent.

BUTLER, District Judge. As the Italian bark Giovanni lay at anchor near the breakwater in the Delaware river (out of the usual course of vessels to and from the sea) on February 7th last, she was run into by the ship Standard, and seriously injured. The ship had been taken in charge at Philadelphia by the city ice boat No. 3, and towed near to the Giovanni, when her hawser parted, and the collision followed.

The night was free of fog and distant lights could readily be seen. The wind (a good breeze) was behind the tow and the tide was turning upward. That the Giovanni was properly anchored, with lights burning brightly, and free from blame in all respects, is not disputed.

The respondent seeks to escape liability by charging the ship with fault. In my judgment however the fault was her own. After running dangerously near the Giovanni (in a southerly direction) she suddenly turned squarely eastward (as the peculiar construction of her machinery enabled her to do.) At the same time the ship put her wheel hard a-port, and immediately after hard a-starboard. The hawser being thus drawn across the ship's bob stays, parted. As soon as she discovered this latter fact the ship again changed her wheel to hard a-port in the hope of avoiding the bark, which was slightly eastward, by passing her to the west. She thus probably avoided the infliction of more serious injury. These facts are not seriously controverted. But as respects the question whether the ship was wrong in first putting her wheel to starboard, as the respondent charges, the testimony is in irreconcilable conflict. The witnesses from the ship, several in number, testify that the order to so turn the wheel came from the tug, while the two witnesses who appear from aboard the tug deny that such an order was given. To a landsman it would seem unreasonable that such an order should have been given (unless indeed by mistake, in the haste and excite-

ment of the occasion) as, if persisted in, it would have turned the ship's head opposite the tug's course. But it seems no more unreasonable that it should have been given from aboard the tug than that the ship's officers should have given it of their own motion. The latter explain, however, that the order was proper, to avoid danger of colliding with the tug, which was passing her bows, while the ship's speed before the wind was rapid. It does not appear, however, that the ship's course was affected by the first turn of the wheel. I do not propose to discuss the testimony. I am satisfied the tug was in fault in carelessly approaching too near the bark with her tow, and that the accident resulted directly from this cause. That she was dangerously near seems to be demonstrated by her conduct. In no other way can her sudden turn from southwestward clear round to eastward with all possible speed, be accounted for. I am satisfied she had no proper lookout and that in consequence she ran so near the bark as to create a situation of peril, that the movements of the ship, the parting of her hawser, and the consequent injury to the bark were the natural results.

The respondent further defends on the ground that the city is not responsible for the fault of the tug; that "the towing of vessels is not a part of the functions imposed on the corporation * * * but is a public duty exercised for the benefit of the whole public," and cites section 980 of 2 Dill. Mun. Corp. in support of this position. The doctrine invoked is old and well understood. It has no application, however, to the facts of this case. We need not concern ourselves with the question whether courts of admiralty recognize it; it is sufficient that the tug was not engaged in the discharge of a public duty, such as the doctrine contemplates, but in the prosecution of a private enterprise for the respondent's profit, under its direction and in pursuance of its chartered rights. Under such circumstances, it is well settled that the municipality is entitled to no immunity. Where it enters upon such private business it assumes all the responsibilities that attach to individuals in like circumstances. In Western Saving Fund Soc. v. Philadelphia, 31 Pa. St. 175, it is decided that "where a municipal corporation engages in things not municipal in their nature it acts as an individual," and is responsible accordingly. In another suit between the same parties, reported in the same volume at page 185, the court (Strong, J.) says: "Where such a corporation engages in things not public it acts as a private individual;" and that where the grant to such a corporation is to enter upon a business for its private advantage, or emolument, (though the public may derive a common benefit therefrom,) the corporation must be regarded in this respect as a private company; that "it stands on the same footing as any individual, or body of persons upon whom a like franchise has been conferred." To the same effect are Pittsburgh v. Grier, 22 Pa. St. 54; Kibele v. City of Philadelphia, 105 Pa. St. 41; Boyd v. Insurance Patrol, 113 Pa. St. 269, [6 Atl. 536.] The case of City Council v. Hudson, 88 Ga. 599, [15 S. E. 678,] presents an admirable illustration of the rule under consideration, and fully covers the case in hand.

The libel must be sustained and a decree entered accordingly.