### CITY OF PHILADELPHIA v. GAVAGNIN.

(Circuit Court of Appeals, Third Circuit. July 9, 1894.)

#### No. 20.

1. COLLISION—TUG AND TOW—VESSEL AT ANCHOR.
   A tug which, owing to lack of a proper lookout, takes her tow so near to an anchored vessel that, on the hawser breaking by reason of the tug suddenly changing her course, the tow is unable to avoid the anchored vessel, renders her owner liable to such vessel, it being without fault, for damages from the collision. The Giovanni v. City of Philadelphia, 59 Fed. 303, affirmed.

2. SAME—LOOKOUT.
   The duty of keeping a lookout is not complied with by the officer in charge of the navigation of a tug with a tow keeping a lookout from the pilot house. The Giovanni v. City of Philadelphia, 59 Fed. 303, affirmed.

3. MUNICIPAL CORPORATIONS—LIABILITY FOR TORTS.
   A city which, pursuant to its charter powers, engages in the business of towing vessels for profit, is liable for a collision caused by the fault of its tug. The Giovanni v. City of Philadelphia, 59 Fed. 303, affirmed.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

This was a libel by Dominico Gavagnin, master of the bark Giovanni, against the city of Philadelphia, for damages for a collision alleged to have been caused by negligence of a tug owned by the city. The district court rendered a decree for libelant. The city appealed.

Howard A. Davis (Charles F. Warwick, on the brief), for appellant.

Henry R. Edmunds, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and GREEN, District Judge.

GREEN, District Judge. This is an appeal from the decree of the district court of the United States for the eastern district of Pennsylvania. It appears from the record that the Italian bark Giovanni was anchored near the breakwater in the Delaware river on the 7th of February, 1893, in the proper place for the anchorage

of vessels, and outside the usual course of ships passing to and from the sea at that point, and while lying at anchor, without apparent fault on her part, she was run into by the ship Standard and seriously injured. The Standard had left the port of·Philadelphia that day in tow of the city ice boat No. 3, owned by the city of Philadelphia. She had been towed safely until she was brought very close to the Giovanni, when, owing to peculiar maneuvers on the part of the city ice boat, the towing hawser parted, and as the Standard was, with the headway then on her, too close to the Giovanni successfully to change her course, the collision necessarily followed.

The night was clear and bright. Lights could be seen afar off. The wind, which was a good sailing breeze, was blowing down the river, and behind the Standard; and the tide had just turned, and was flowing upward. It is not disputed that the Giovanni was anchored upon a proper and safe anchorage ground; that all her lights were set and burning brightly; and in all respects she appears, in this matter, free from the slightest blame. The tugboat charges the fault of the collision upon the ship Standard, but the evidence does not sustain this view of the case. It appears clear that the fault which caused the collision was that of the tug alone. The evidence shows that she ran down the river, in towing the Standard, very close indeed to the Giovanni, on a southerly course. Apparently, from her maneuver, discovering the Giovanni when she was at an exceedingly short distance from her, she suddenly turned squarely to the east,—a maneuver which she was enabled to perform with great celerity, by the peculiar construction of her ma-chinery. At the same time, owing to contradictory orders, the Standard put her wheel first hard a-port, and then immediately hard a-starboard. The result of the tug's change of direction was to draw the towing hawser sharply across the ship's bob stays, and from the unusual strain it parted. As soon as the Standard discovered this accident, she apparently did all she could to avoid the collision, but was unsuccessful, although it appears from the testimony that what she did do probably avoided a more serious accident. As is usual in cases of this character, there is great conflict in the testimony, especially as to the orders given upon the ship, to put her wheel first a-port and then to starboard; but the court below, after a careful consideration of the testimony, came to the conclusion that the ship did everything she could to avoid the collision.

It is quite clear, without discussing the point at any length, that the gross carelessness of the tug in directing her course, and necessarily the course of the Standard, so close to the Giovanni as she did, before sighting her, is the sole cause of the collision of the Standard with the Giovanni. The evidence also discloses the vital fact that the tugboat had no proper lookout. It is true that the mate declares that he was keeping a lookout in the pilot house, but that is not a compliance with the duty imposed upon the tug. The officer in charge of the navigation of the vessel is not a competent lookout, nor is the pilot house the place where the lookout should

be stationed. The lookout should be charged with no other duty than that to which he is assigned, and in that duty he should be actually vigilant and continuously employed, without having his attention distracted by any other service. The very fact that the mate, acting as lookout, failed to see the lights of the Giovanni until just the moment before the sudden veering of the tugboat to the eastward, shows that his performance of the duty imposed upon him, if indeed he was fulfilling it at all, was far from satisfactory, and certainly indicative of gross neglect. Upon this point of the case we have no difficulty whatever in holding the tug guilty.

Nor can the appellants escape liability upon the assumption that they are not responsible for the negligence of the officers of the tug while engaged in performing that which was not one of the duties of the municipality. The contention is that towing vessels is no part of the functions of the city of Philadelphia, and the municipality is not liable for negligence of its officers while engaged in doing that which is not a municipal function or duty. It appears that the city ice boats are primarily maintained for the purpose of keeping the channel open in the Delaware river for the passage of vessels to and from the port of Philadelphia. This is a duty which it is said is not incumbent upon the municipality of Philadelphia, but is done for the benefit of commerce, and the towing of vessels is not carried on as part of the business of the municipality, nor for its private gain. It is difficult to state the general rule embracing the torts for which a private action will lie against a municipal corporation, but the following may be taken as thoroughly settled:

"So far as municipal corporations exercise powers conferred on them for purposes essentially public,—purposes pertaining to the administration of general laws made to enforce the general policy of the state,—they should be deemed agencies of the states, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless by statute the action is given. In reference to such matters they should stand as does sovereignty, whose agents they are, subject to be sued only when the state by statute declares they may be. In so far, however, as they exercise powers not of this character, voluntarily assumed,—powers intended for the private advantage and benefit of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage which an individual or private corporation exercising the same powers for purposes essentially private would be liable." 15 Am. & Eng. Enc. Law, tit. "Municipal Corporations," p. 1141.

Applying this rule to the case at bar, it is clear that the city must be held liable. The city ice boat was not engaged in the discharge of a public duty at the time of its negligent conduct, but in the prosecution of a private enterprise for a direct profit to the city of Philadelphia, and under its direction, and in truth in pursuance of its charter; for by the act of assembly of the state of Pennsylvania, approved June 1, 1885 (commonly known as the "Bullitt Bill"), for the government of the city of Philadelphia, it is provided that the operations of the city ice boats shall be under the direction of the department of public works of that city, and one of the city ordinances provides that it shall be lawful for the trustees

of the ice boats to charge and collect such rates of towage for the service of the ice boats under their care as they may deem best. And another ordinance, similar in effect, provides that it shall be lawful for the trustees of the city ice boats to allow vessels to be used in the Delaware river and bay, and authorizes the trustees to make such charges therefor as they may deem adequate. Under such circumstances the city of Philadelphia cannot plead that it is entitled to immunity. When a municipality enters upon private enterprises, transacting private business, it assumes all the responsibility that attaches to individuals under like circumstances. Where a corporation engages in things not public, it acts as any other private individual would act, and under the same responsibilities. The decree of the court below is affirmed.