### THE GEORGE W. CHILDS.

### THE W. C. TANNER.

OWNERS OF THE GEN. GEARY v. THE GEORGE W. CHILDS and THE W. C. TANNER.

(District Court, E. D. Pennsylvania. March 19, 1895.)

#### No. 83.

1. COLLISION—TOW WITH ANCHORED VESSEL—ACTS IN EXTREMIS.

A sloop which was anchored at night without a light up cannot complain because a tow, which, without fault of her own, was brought into

immediate danger of collision, failed in the excitement of the moment to drop her anchor or cut her hawser as soon as she might have done.

**2. SAME—PRESUMPTIONS.**

Where sufficient cause for a collision is found in a neglect of duty by one vessel, it should be ascribed to that alone, unless other contributory negligence is proved; but if it is shown that the other vessel had no sufficient lookout it will be presumed that her negligence contributed to the accident unless the contrary is proved.

**8. SAME—INSUFFICIENT LOOKOUT—MASTER OF TUG.**

The master of a tug stationed in her pilot house in charge of the wheel is not a competent lookout, and is not in a proper place for that purpose. There should be at least one person assigned exclusively to that duty and stationed in the most favorable position for seeing, and an alleged custom among tugs to have no lookout but the master is no excuse.

This was a libel by the owners of the sloop Gen. Geary against the tug George W. Childs and the schooner W. C. Tanner, to recover damages resulting from a collision.

J. Warren Coulston and Alfred Driver, for the Gen. Geary.

John F. Lewis, for the George W. Childs.

BUTLER, District Judge. On the night of November 11, 1892, as the sloop passed down the Delaware river, near Chester, she was run into by the schooner, then in charge of the tug, and with her cargo was sunk. The night was clear, without moon, and the tide ebb.

The material questions raised are: Were the sloop's lights up? and was either the schooner or tug in fault? As respects the first, the testimony is conflicting, and irreconcilable. After a careful examination of it, my judgment is against the sloop. The clear weight of the testimony justifies a conclusion that her lights were not up.

As respects the second question, I have found more difficulty. The sloop's negligence did not of course, justify the collision if it could be avoided by the exercise of proper care. The libelant says it could have been avoided, and charges the respondent with carelessness which tended necessarily and directly to produce it. As respects the schooner the charge is not sustained. She appears to have been blameless. She had a proper lookout and followed the tug as closely as she could. It is far from clear, if it is even probable, that dropping her anchor, or cutting her hawser earlier would have been serviceable. I believe, with her mate Cunley, that neither would. But if a different conclusion were justifiable she could not be blamed for the omission. Being placed in a position of danger, without fault of her own, the sloop could not complain that she failed in the consequent excitement to select the best means of escape. As regards the tug the case is not so clear. She is charged with negligence in failing to maintain a proper lookout, and as a consequence in approaching too near the sloop. Finding a sufficient cause for the collision in the latter's neglect of duty, it should be ascribed to this alone, unless other contributory negligence is proved. If the charge against the tug

is sustained by the evidence the necessary inference is that her negligence contributed to the accident, unless the contrary is proved. Is the charge so sustained? All the direct testimony on the subject is from her witnesses—the master Horner—the deck-hand Tracy, and the mate Jefferson. Their testimony is not such as to inspire full confidence in their statements. They contradict each other, and Tracy contradicts himself as well. Making the most of what they say for the tug, it shows that her only lookout, for some time before the collision, was the master, who was stationed in the pilot house, and had charge of the wheel. That this was not a proper lookout is clear. The station was not the most favorable for seeing—especially low-down craft; and the master in charge of the wheel, and of the navigation of the vessel, was not a proper person to entrust with the duty. There should have been at least one person assigned exclusively to this duty, and stationed in the most favorable situation for seeing. The subject has been so often considered by the courts, that it is only necessary to refer to what is said in the cases cited. The Ottawa, 3 Wall. 273; Haney v. Steam Packet Co., 23 How. 291–293; Chamberlain v. Ward, 21 How. 548, 570; St. John v. Paine, 10 How. 585; The Genesee Chief v. Fitzhugh, 12 How. 443; The Ripple, 41 Fed. 63; The Myrtle, 44 Fed. 779; City of Philadelphia v. Gavagnin [10 C. C. A. 552], 62 Fed. 617. In the case last named, decided by the court of appeals of this circuit, it is said:

"The evidence discloses the vital fact that the tugboat had no proper lookout. It is true the mate declared that he was keeping a lookout in the pilot house, but that is not a compliance with the duty imposed on the tug. The officer in charge of the navigation of the vessel is not a competent lookout, nor is the pilot house the place where the lookout should be stationed. The lookout should be charged with no other duty, and in that duty he should be actually vigilant, and continuously employed without having his attention distracted by anything else."

In this view of the law the conclusion is unavoidable that the tug was guilty of carelessness, which directly tended to the collision—as directly as did that of the sloop; and in the absence of satisfactory proof that it did not so contribute, it is reasonable to infer that it did; indeed the inference cannot be avoided. Of course it may be repelled by proof that it did not. On behalf of the tug it is urged that the sloop could not have been seen earlier than she was by the most vigilant lookout properly stationed. If the testimony proves this, it follows that the failure to maintain a lookout did not contribute to the accident. I do not think, however, that the evidence does prove it. The master says she could not have been seen earlier. But he does not know. Had he been differently stationed and devoting his attention exclusively to ascertaining this fact he could tell us. But stationed in the pilot house directly behind the mast, in charge of the wheel, and engaged in "jabbering" as his mate says, who was "keeping him company," his statement that the sloop could not have been seen earlier is unreliable. Besides he is not an impartial witness. The mate Jefferson says he was not looking out for objects ahead, but was engaged in conversation with the master and was thus in-

terfering with a proper discharge of the latter's duty. A lookout should not be interested in anything whatever, but the performance of that duty. Conversation tends to divert his attention; men instinctively and unconsciously look towards those with whom they talk, and allow their minds to become absorbed in the conversation. This witness, Jefferson, says he did not see the sloop till his attention was called to her; of course he would not, as he was not looking forward. He saw her, however, when the master directed his attention that way, and says she could not then be seen with distinctness, but that he saw she was a vessel with sails and seemed to be a sloop. How much further he could have seen her he does not know, nor can we infer. The witnesses from aboard the schooner did not see her until the tug gave warning; but the schooner was 50 fathoms behind, with the tug directly between her and the sloop, as the schooner's lookout testified, and also with whatever smoke the tug's stack emitted increasing the obstruction to the view. As soon as the tug sheered the sloop was seen from the schooner. I believe the tug should have seen her considerably earlier. The night was favorable to seeing; the schooner's sail was new and bright in color; and I am convinced that she was not seen earlier only because of the tug's neglect to maintain a proper lookout. The statement that it is not customary for tugs to maintain a more vigilant lookout than this tug had, is immaterial. The law determines their duty in this respect, and they cannot avoid it without becoming responsible for the consequences. I will not pursue the subject further. While I believe it to be clear that a proper lookout would have discovered the sloop in time to keep off, it is not necessary that this fact shall affirmatively appear, except as a result of the inference stated. It is sufficient that the contrary is not proved. In such case the presumption against the tug stands. Each vessel was guilty, and equally guilty of carelessness which naturally tended to the accident, and each must therefore be held guilty of having contributed to its occurrence. It can no more be ascribed exclusively to the negligence of the one than the other. It cannot be said the sloop would have escaped if her lights had been up. That cannot be known. Vessels with lights up are frequently run into for want of proper lookout on those approaching. As well might it be said that the absence of the sloop's lights is immaterial because the absence of a lookout on the tug rendered them useless.

A decree must be entered sustaining the libel for half damages and half costs.