[Civ. No. 11410.   Second Appellate District, Division Two.—August 18, 1937.]

GENERAL PETROLEUM CORPORATION OF CALIFORNIA (a Corporation), Appellant, v. CITY OF LOS ANGELES, Respondent.

Martin J. Weil and W. L. Appleford for Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Bourke Jones and John Beardsley, Deputies City Attorney, for Respondent.

McCOMB, J.—This is an appeal by plaintiff from a judgment in favor of defendant, City of Los Angeles, after the trial court sustained an objection to the introduction of evi-

dence on the ground that the complaint as amended failed to state a cause of action against defendant municipality.

The essential facts alleged in the amended complaint are:

On May 21, 1932, the *SS. Hakonesan Maru*, pursuant to rules and regulations of the board of harbor commissioners of the City of Los Angeles, paid defendant municipality a fee for the purpose of obtaining a pilot for said steamship from the open sea to docks of which plaintiff was lessee, located in the harbor. John Oliegreen, a duly licensed pilot, employed by defendant municipality, was placed in control of the steamship. Due to his negligent handling of the vessel, it collided with the wharves maintained by plaintiff, causing damage in the sum of $4,093.75.

These questions are presented for determination:

*First: Was defendant municipality engaged in a proprietary function in furnishing a pilot for the ship entering Los Angeles harbor and thus liable for damage resulting from the pilot's negligence?*

*Second: Is the defense of ultra vires available to defendant municipality?*

■ The first question must be answered in the affirmative. The law is settled that a municipality is engaged in a governmental function only when exercising acts of sovereignty, such as those pertaining to:

(a) The making and enforcing of police regulations to:
1. Prevent crime
2. Preserve the public health
3. Prevent fires
4. Care for the poor, or
5. Educate the young

(b) The using of buildings and instrumentalities connected with the performance of the foregoing functions. (*Chafor* v. *City of Long Beach*, 174 Cal. 478, 487 [163 Pac. 670, Ann. Cas. 1918D, 106, L. R. A. 1917E, 685].)

■ It is likewise settled that, when a municipality engages in functions that are ordinarily exercised by private persons and which have no relation to the public health or police power, it is engaged in proprietary functions. (*Benton* v. *City of Santa Monica*, 106 Cal. App. 339, 343 [289 Pac. 203].)

Applying the foregoing rules to the instant case, it is evident that in furnishing pilots to vessels entering and leaving the port of Los Angeles, defendant municipality was engaged

in a proprietary and not a governmental function. This conclusion finds support in the following cases: *Coleman* v. *City of Oakland,* 110 Cal. App. 715, 721 [295 Pac. 59] ; *Giovanni* v. *City of Philadelphia,* 59 Fed. 303, 304; *City of Philadelphia* v. *Gavagnin,* 62 Fed. 617, 619; *Guthrie* v. *City of Philadelphia,* 73 Fed. 688.

In *Coleman* v. *City of Oakland,* 110 Cal. App. 715 [295 Pac. 59], a case in which the municipality was held liable for damages resulting from the negligent operation of a city-owned truck while engaged in work on the municipal airport, Mr. Justice Dooling says at page 720:

"We have no hesitancy in deciding that in the conduct of an airport the municipality is acting in a proprietary capacity. An airport falls naturally into the same classification as such public utilities as electric light, gas, *water and transportation systems, which are universally classed as proprietary.* Its nearest analogy is perhaps found in docks and wharves. 'An airport with its beacons, landing fields, runways and hangars is analogous to a harbor with its lights, wharves and docks; the one is a landing place and haven of ships that navigate the water; the other of those that navigate the air.' (*Dysart* v. *St. Louis,* 321 Mo. 514 [62 A. L. R. 762, 11 S. W. (2d) 1045].) 'When a municipal corporation maintains a public wharf, and charges toll or wharfage to the owners of vessels making use of the wharf, it is liable to the same extent as an individual wharf-owner.' (19 R. C. L., p. 1134; 43 C. J., p. 1175.)" (Italics ours.)

In *Giovanni* v. *City of Philadelphia, supra,* a case holding the defendant city liable for damages resulting from the negligent handling of a towboat owned by the municipality, Judge Butler says at page 304:

"The respondent further defends on the ground that the city is not responsible for the fault of the tug; that 'the towing of vessels is not a part of the functions imposed on the corporation . . . but is a public duty exercised for the benefit of the whole public', and cites section 980 of 2 Dill. Mun. Corp. in support of this position. The doctrine invoked is old and well understood. It has no application, however, to the facts of this case. We need not concern ourselves with the question whether courts of admiralty recognize it; it is sufficient that the tug was not engaged in the discharge of a public duty, such as the doctrine contemplates, but in the prosecution of a private enterprise for the respondent's

profit, under its direction and in pursuance of its chartered rights. Under such circumstances, it is well settled that the municipality is entitled to no immunity. Where it enters upon such private business it assumes all the responsibilities that attach to individuals in like circumstances. In *Western Saving Fund Soc.* v. *Philadelphia,* 31 Pa. St. 175 [72 Am. Dec. 730], it is decided that 'where a municipal corporation engages in things not municipal in their nature it acts as an individual', and is responsible accordingly. In another suit between the same parties, reported in the same volume at page 185, the court (Strong, J.) says: 'Where such a corporation engages in things not public it acts as a private individual;' and that where the grant to such a corporation is to enter upon a business for its private advantage, or emolument (though the public may derive a common benefit therefrom), the corporation must be regarded in this respect as a private company; that 'it stands on the same footing as any individual, or body of persons upon whom. a like franchise has been conferred'.''

In *City of Philadelphia* v. *Gavagnin, supra,* the United States Circuit Court of Appeals for the Third Circuit, in affirming *Giovanni* v. *City of Philadelphia, supra,* at page 619, says:

''Nor can the appellants escape liability upon the assumption that they are not responsible for the negligence of the officers of the tug while engaged in performing that which was not one of the duties of the municipality. The contention is that towing vessels is no part of the functions of the city of Philadelphia, and the municipality is not liable for negligence of its officers while engaged in doing that which is not a municipal function or duty. It appears that the city ice boats are primarily maintained for the purpose of keeping the channel open in the Delaware river for the passage of vessels to and from the port of Philadelphia. This is a duty which it is said is not incumbent upon the municipality of Philadelphia, but is done for the benefit of commerce, and the towing of vessels is not carried on as part of the business of the municipality, nor for its private gain. It is difficult to state the general rule embracing the torts for which a private action will lie against a municipal corporation, but the following may be taken as thoroughly settled:

" 'So far as municipal corporations exercise powers conferred on them for purposes essentially public,—purposes pertaining to the administration of general laws made to enforce the general policy of the state,—they should be deemed agencies of the states, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless by statute the action is given. In reference to such matters they should stand as does sovereignty, whose agents they are, subject to be sued only when the state by statute declares they may be. In so far, however, as they exercise powers not of this character, voluntarily assumed,—powers intended for the private advantage and benefit of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage which an individual or private corporation exercising the same powers for purposes essentially private would be liable.' (15 Am. & Eng. Enc. Law, tit. 'Municipal Corporations', p. 1141.)

"Applying this rule to the case at bar, it is clear that the city must be held liable. The city ice boat was not engaged in the discharge of a public duty at the time of its negligent conduct, but in the prosecution of a private enterprise for a direct profit to the city of Philadelphia, and under its direction, and in truth in pursuance of its charter; for by the act of assembly of the state of Pennsylvania, approved June 1, 1885 (commonly known as the 'Bullitt Bill'), for the government of the city of Philadelphia, it is provided that the operations of the city ice boats shall be under the direction of the department of public works of that city, and one of the city ordinances provides that it shall be lawful for the trustees of the ice boats to charge and collect such rates of towage for the service of the ice boats under their care as they may deem best."

In *Guthrie* v. *City of Philadelphia, supra,* a city-owned and operated ice boat undertook to break ice within a dock and through its negligent operation injured the dock. Holding the city liable, Judge Butler says at page 688:

"The only defense urged is, in substance, that the city was engaged through its agents in discharging a public municipal duty, and consequently that it is not responsible for the negligence which caused the injury. The answer to this, in my judgment, is twofold, first that the city owed no municipal duty in Delaware, and second that it was engaged in a private

service for the benefit of the owners of the dock, for which it was entitled to compensation. It is unimportant that it performed the service gratuitously. Besides the service was a necessary incident to that rendered the schooner for which the city charged compensation.''

It is the rule that in the absence of special legislation a municipal corporation is not liable for injuries resulting from negligent acts of its agents engaged in governmental functions (18 Cal. Jur. 1094, sec. 345; 8 Cal. Jur. Ten-year Supp. 223), but a municipal corporation is liable for damages resulting from negligence of its agents or servants when acting in its proprietary capacity. (18 Cal. Jur. 1096, sec. 346; 8 Cal. Jur. Ten-year Supp. 225.) Therefore, since defendant municipality was engaged in a proprietary function at the time of the accident and the complaint as amended alleged that the injury resulted from the negligence of the city's agent, a cause of action was stated against defendant City of Los Angeles.

The second question must be answered in the negative. The law is settled that the defense of *ultra vires* is not available to a municipal corporation, unless it is pleaded. (Vol. 6, McQuillin, Municipal Corporations, 2d ed., 713 (1937); *S. W. Towle Lumber Co.* v *Anderson,* 208 Cal. 371, 374 [281 Pac. 500].) In the present case this defense was not pleaded and therefore may not be urged by defendant municipality.

For the foregoing reasons the judgment is reversed.

Crail, P. J., and Wood, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 15, 1937, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing is denied. We withhold, however, our approval of the last paragraph of the opinion wherein it is held that the defense of *ultra vires* is not available to a municipal corporation unless it is pleaded.